IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:12-cv-20367-PAS

BUBBLE GUM PRODUCTIONS, LLC.,

        Plaintiff,

v.

DOES 1-80,

        Defendants.
_____/

PUTATIVE DEFENDANT DOE 1'S
MOTION TO QUASH COMAST SUBPOENA

        Defendant, DOE 1, by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 45(c)(3), hereby files his/her motion to quash subpoena served upon Comcast Cable Communications Management LLC ("Comcast"), and as grounds therefor, states as follows:

        1.     The undersigned law firm's client, who may or may not be Defendant, DOE 1 (hereinafter "Defendant" or "DOE 1", without admission that the undersigned's client is, in fact, DOE 1," as the term is used in this action), has recently been advised by Comcast that Comcast has been issued a subpoena in connection with the above-styled suit pertaining to the "name, current (and permanent) addresses, and Media Access Control ("MAC") address" for the device(s) assigned the internet protocol ("IP") address 174.48.166.34 on December 15, 2011 at 14:37:11 GMT.

        2.     Defendant DOE 1 (and counsel) only recently learned of the pendency of this action, and has not been able to fully evaluate the underlying claims; however, for the following

reasons, Defendant DOE 1 hereby objects to the subpoena, and moves this Honorable Court to quash the subpoena and/or issue a protective order with respect to same.

3. Indeed, the Rule is fundamentally clear when mandating that "[o]n timely motion, the issuing court must quash or modify a subpoena that ... (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies." Here, the Plaintiff seeks information that is purely speculative, beyond the scope of relevancy in these proceedings, and otherwise protected by the First Amendment of the Bill of Rights.

4. The First Amendment protects an individual's right to anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995) ("The freedom to publish anonymously extends beyond the literary realm"), and this protection extends to anonymous speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) ("There is 'no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]' "); *accord, Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C.2009) ("Such rights to speak anonymously apply ... to speech on the Internet.").

5. While copyright infringement is not afforded First Amendment protection, file-sharing does involve aspects of expressive communication. *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("the file sharer may be expressing himself or herself through the music selected and made available to others."); *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 163 (D. Mass. 2008) ("there are some creative aspects of downloading music or making it available to others to copy: the value judgment of what is worthy of being copied; the association of one recording with another by placing them together in the same library; the self-expressive act of identification with a particular recording; the affirmation of joining others listening to the same recording or expressing the same idea....

2

[W]hile the aspect of a file-sharer's act that is infringing is not entitled to First Amendment protection, other aspects of it are.").

6. "To assess whether the plaintiffs' subpoena should override the putative defendants' First Amendment rights, the Court uses the five-part test originally explicated in *Sony Music Entertainment v. Does 1-40*, 326 F. Supp. 2d at 564-65." This test has been applied by numerous courts across the country and in similar file-sharing copyright infringement actions. *See, e.g., Arista Records*, 551 F.Supp.2d at 8 (D.D.C.2008) (Kollar-Kotelly, J.); *Achte/Neunte*, 736 F.Supp.2d at 216 n. 2 (D.D.C.2010) (Collyer, J.); *West Bay One*, 270 F.R.D. at 16 n. 4 (D.D.C.2010) (Collyer, J.); *London-Sire*, 542 F.Supp.2d at 164 (D.Mass.2008); *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir.2010); *Virgin Records v. Doe*, No. 5:08-cv-389, 2009 WL 700207, 2009 U.S. Dist. LEXIS 21701 (E.D.N.C. Mar. 16, 2009); *Elektra Entm't Group Inc. v. Does 1-9*, No. 04-cv-2289, 2004 WL 2095581, at *3-4 (S.D.N.Y. Sept. 8, 2004). "The *Sony* test calls for the court to assess whether the plaintiffs' need for identifying information outweighs the putative defendants' right to First Amendment anonymity by balancing: **(1) the concreteness of the plaintiffs' showing of a prima facie claim of actionable harm;** (2) the specificity of the plaintiffs' discovery request; (3) alternative means to get the information the plaintiffs seek; (4) the need for the information to advance the plaintiffs' claim; and (5) the objecting party's expectation of privacy." *Sony*, 326 F.Supp.2d at 564-65 (emphasis added).

7. Indeed, even if the IP address identified in the Complaint was assigned by Comcast putative Defendant DOE 1, Plaintiff has failed to make the connection that the alleged file transfer was performed by putative Defendant DOE 1. Thus, Plaintiff has failed to satisfy the first element of the *Sony* test, i.e., the concreteness of the plaintiff's showing of a prima facie claim of actionable harm.

8. The United States District Court for the Eastern District of New York stated in *In re BitTorrent Adult Film Copyright Infringement Cases*, CIV.A. 11-3995 DRH, 2012 WL 1570765 (E.D.N.Y. 2012), in accord, as follows:

> "[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a [copy written] film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. As one introductory guide states:
>
>> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router. *See* "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm
>
> Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call.
>
> Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of U.S. homes now have wireless access. *See* Lardinois, F,. "Study: 61% of U.S. Households Now Have WiFi," available at http://techcrunch.com, 4/5/12. Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service. As a result, a single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals. *U.S. v. Latham*, 2007 WL 4563459, at *4 (D.Nev. Dec.18, 2007). Different family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has

4

been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. ***The router could be a wireless device in which case, <u>computers located within 300 feet</u> of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router signal strength could be increased <u>beyond 600 feet</u> if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software.*** (emphasis added).

Some of these IP addresses could belong to businesses or entities which provide access to its employees, customers and sometimes (such as is common in libraries or coffee shops) members of the public.

9. As the Southern District has aptly recognized,

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading [protected content].

*Digital Sin, Inc. v. Does 1–176*, —— F.R.D. ——, 2012 WL 263491, at *3 (S.D.N.Y. Jan.30, 2012) (citations omitted).

10. As another court has noted:

> [T]he ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes ... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous innocent internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed.

*SBO Pictures, Inc. v. Does 1–3036,* 2011 WL 6002620, at *3 (N.D.Cal. Nov.30, 2011) (citations omitted).

11. Consideration of these issues casts significant doubt on Plaintiff's assertions that "Defendants' actual names are unknown to Plaintiff ... [i]nstead, each Defendant is known to Plaintiff by an Internet Protocol address... " *See* Compl. at ¶4, or that the subscriber to the IP address listed was actually the individual who carried out the complained of act(s).

12. In sum, although the Complaint states that IP addresses are assigned to "devices" and thus by discovering the individual associated with that IP address will reveal Defendants' true identity," this is unlikely to be the case. Most, if not all, IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.

13. Accordingly, since the Plaintiff has failed to satisfy the first element of the *Sony* test, the motion to quash should be granted.

WHEREFORE, putative Defendant, DOE 1, requests this Honorable Court enter an order quashing the subpoena directed at Comcast, as well as provide any other relief deemed just and proper.

>Respectfully submitted,
>
>NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.
>1645 Palm Beach Lakes Boulevard, Suite 1200
>West Palm Beach, Florida 33401
>Telephone:   (561) 686-3307
>Facsimile:   (561) 686-5442
>E-mail:      mnullman@nasonyeager.com
>Attorneys for Defendant, DOE 1
>Florida Bar No.: 17596
>
>By:/s/ Michael H. Nullman
>   MICHAEL H. NULLMAN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 17, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system. Additionally, a true and correct copy of the foregoing has been served upon Comcast via facsimile at (866) 947-5587.

>/s/ Michael H. Nullman
>MICHAEL H. NULLMAN

H:\09Admin\MHN\NCS\MotionForProtectiveOrderDoe1MHN/mhn